FILED
2020 SEP 25 PM 2:30
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRYAN O.,<br><br>                Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL,<br><br>    Commissioner of Social Security,<br><br>                Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>Case No. 2:19-cv-513-DBP<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"). After careful review of the record, the parties' briefs, and arguments presented at a hearing held on September 9, 2020 (ECF No. 32), the undersigned concludes that the Commissioner's decision is supported by substantial evidence and legally sound and is, therefore, AFFIRMED.[1]

## I. STANDARD OF REVIEW

The scope of the Court's review of the Commissioner's final decision is specific and narrow. As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*,

---

[1] The parties have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings in this matter, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 19); *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The threshold for evidentiary sufficiency under the substantial evidence standard is "not high."  *Id.* at 1154.  Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotations and citations omitted).  Under this deferential standard, this Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  The Court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close."  *Biestek*, 139 S. Ct. at 1157.

## II.  BACKGROUND

Plaintiff applied for benefits in February and May 2018, alleging disability beginning November 2017, due to back pain, depression, and neuropathy (Certified Administrative Transcript (Tr.) 222, 236, 282).

After a hearing (Tr. 54-91), an administrative law judge (ALJ) issued an April 2019 decision finding that Plaintiff was not disabled (Tr. 38-53).  The five-step sequential evaluation for assessing disability directs the ALJ to consider:  1) whether the claimant is currently working; 2) if the claimant has a severe impairment; 3) if the impairment(s) meet or medically equal an impairment listed in Appendix 1; 4) if the impairment(s) prevent the claimant from doing past relevant work; and 5) if the impairment(s) prevent the claimant from doing any other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4).[2]

---

[2] All references to the C.F.R. are to part 404 of the 2019 edition, which governs claims for DIB and was in effect at the time of the ALJ's decision.  Parallel citations to part 416, which

Here, at step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and major depressive disorder (Tr. 40).  *See* 20 C.F.R. § 404.1521. Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of light work with the following limitations:

- he could frequently climb ramps and stairs;
- he could occasionally climb ladders and scaffolds;
- he could occasionally balance, stoop, kneel, crouch, and crawl;
- he could occasionally be exposed to unrestricted heights and dangerous moving machinery;
- he could perform goal oriented but no assembly line-paced work;
- he could occasionally interact with co-workers, supervisors, and the general public; and
- he could adapt to routine changes in the workplace; but
- he was limited to unskilled work (Tr. 42).

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as an explosives operator II (Tr. 46), and, in the alternative at step five, he found that Plaintiff could perform representative light unskilled jobs existing in significant numbers in the national economy (Tr. 47).  Therefore, Plaintiff was not disabled under the strict standards of the Act (Tr. 48).  Plaintiff requested review of this decision and the Appeals Council denied that request (Tr. 3-8), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).

### III. DISCUSSION

On appeal, Plaintiff alleges the ALJ improperly played doctor and made his own layman's findings regarding the mental limitations contained within the RFC.  He further alleges

---

governs claims for SSI, are identical and will not be included.

that the ALJ's findings were not supported by substantial evidence (ECF No. 24, Plaintiff's Brief (Pl. Br.) 9-26).

### A. The mental functional limitations in the RFC account for Plaintiff's impairment.

In formulating the RFC, the ALJ considered the record as a whole, which showed normal mental status examinations and improved symptoms with mental health medication (Tr. 42-46). The ALJ further considered that no doctor opined that Plaintiff had any mental limitations (*see* Tr. 42-46). Based on this, the ALJ found that Plaintiff could perform unskilled work with social limitations. Plaintiff contends that the ALJ erred in formulating this RFC without relying on a specific medical opinion (Pl. Br. at 11-25).

Upon review, the court finds that the ALJ's finding is supported by substantial evidence. *See Biestek*, 139 S. Ct. at 1154. ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (internal citation omitted)). Indeed, the ALJ based his RFC finding on the treatment notes which showed that Plaintiff consistently had normal mental status examinations and only sporadically complained of depression (Tr. 499, 501, 503, 506, 512, 514, 516, 809-12). And in March 2019, after taking Cymbalta (an antidepressant), Plaintiff had no difficulty concentrating; had improved symptoms; was slightly more positive; was sleeping well; had no difficulty concentrating; denied suicidal ideation; was able to maintain relationships; his mood was unaffected; and his overall function improved (Tr. 809-12). Moreover, Plaintiff testified that he had a driver's license, helped in the kitchen, did laundry, played video games, read two books per month, was on social media two hours per day, went shopping, and spent time with his girlfriend (Tr. 59, 61-62, 64-68). *See id.*; *see also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (ALJ reasonably discounted treating physician opinion which was inconsistent with the claimant's own statements about his activities). His girlfriend similarly reported that he played

video games, watched TV, read books, left the house two to three times per week to shop and do laundry, and cared for her child one weekend every two weeks (Tr. 307).

In addition, the ALJ also considered consultative examiner Dr. McGoldrick's observations that Plaintiff had a normal mental status examination except for depression—he had good concentration; normal speech; normal eye contact; and was cooperative with logical and coherent thought processes (Tr. 44; *see* Tr. 606). Plaintiff obtained a perfect score on the Montreal Cognitive Assessment (a memory test) (Tr. 607). Plaintiff blamed his depression on his back pain and Dr. McGoldrick noted that, although Plaintiff's depression was moderate to severe, it appeared situational, as it was not there before he experienced back pain (Tr. 608). Dr. McGoldrick opined that Plaintiff's symptoms would improve with decreased back pain, increased functionality, and medication, and noted he had no cognitive deficits that would affect his abilities to work or complete daily activities (Tr. 608). *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that impairment was well-controlled supported ALJ's conclusion the claimant was not disabled).

Two state agency psychologists, Dr. Garcia and Dr. Kjolby, opined that Plaintiff did not have any severe mental health impairment[3] (Tr. 102-03, 120). In explaining their findings, they pointed to the many normal mental status examinations in the record, and the fact that no doctor identified more than mild limitations (Tr. 102-03, 120; *see* Tr. 499, 501, 503, 506, 512, 514, 516). Dr. Garcia and Dr. Kjolby acknowledged that Plaintiff had two psychiatric hospitalizations

---

[3] A severe impairment significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. If we rate the degrees of your mental limitation as "none" or "mild," the agency will generally conclude that a claimant's mental impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in his or her ability to do basic work activities. 20 C.F.R. § 404.1520a.

5

(Tr. 102-03, 120; *see* Tr. 458, 660). Those hospitalizations were precipitated by stressful life events such as becoming homeless, being attacked by his parents, and losing visitation rights with his child. Coupled with the fact that his symptoms resolved with medication and therapy, the doctors concluded that Plaintiff's severe episodes of depression were temporary and did not reflect a more consistently impaired state of functioning (Tr. 102-03, 120, 458, 660-62). *Cf. Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016) (affirming the ALJ's decision to discount a treating physician's opinion: "Many of the problems Dr. Sun describes do not appear to be medical in nature but instead reflect situational stressors like his pending Social Security claim."). The doctors also considered that, when Plaintiff followed through with treatment, his abilities were not impaired (Tr. 103, 120).

      The ALJ pointed to Plaintiff's consistent normal mental status examinations but acknowledged that after his two severe episodes of major depressive disorder and suicidal ideation, he experienced sporadic episodes of blunted or depressed affect (Tr. 45 (ALJ noting blunted affect); *see* Tr. 458, 660-62, 786, 813-16)). In January 2018, Plaintiff was admitted to the hospital for six days with suicidal ideation (Tr. 458). Numerous stressors—including chronic back pain, unemployment, financial stress, and an unsuccessful custody battle with his ex-wife— precipitated his hospitalization (Tr. 458). After taking Effexor and an increased dose of Gabapentin, he reported benefits including increased appetite and an ability to joke and laugh; and he denied suicidal ideation or any side effects from his medications (Tr. 458). He had an improved mood, appropriate affect, good hygiene, good eye contact, normal speech, linear and goal directed thought process, good insight and judgment, normal thought content, intact memory, and he was interactive, calm, and friendly (Tr. 458).

Likewise, in November 2018, Plaintiff's parents physically attacked him, he became homeless, and he was unable to see his child (Tr. 660-62). Plaintiff was hospitalized for nine days. After medications and therapy were provided, his mood improved and, upon discharge, he had a normal mental status examination and was friendly and cooperative (Tr. 660-62). After these hospitalizations, Plaintiff experienced sporadic episodes of blunted or depressed affect (Tr. 45 (ALJ noting blunted affect); *see* Tr. 786, 813-16). Based on this record, the ALJ reasonably found that, while Plaintiff had some exacerbations requiring hospitalization, his mental impairment was well controlled by medication and therapy, and therefore he was not disabled (Tr. 810 ("Depressive Disorder – improving with Cymbalta")). *See Kelley*, 62 F.3d at 338 (fact that impairment was well-controlled supported ALJ's conclusion the claimant was not disabled).

While the ALJ concluded that the limitations stemming from Plaintiff's mental impairment were not disabling, he found that Dr. Garcia's and Dr. Kjolby's opinions that he had no severe mental health impairment inconsistent with and unsupported by the record (Tr. 45). *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole). And he reasonably concluded that the record provided substantial evidence for his finding that Plaintiff could perform goal oriented but no assembly line-paced work; occasionally interact with co-workers, supervisors, and the general public; adapt to routine changes in the workplace; and was (not) limited to unskilled work[4] (Tr. 42). *See Allman*, 813

---

[4] The ALJ wrote that Plaintiff was "not limited to unskilled work" (Tr. 42). However, he found that Plaintiff could perform unskilled jobs at steps four and five (Tr. 46-47). Thus, the Court concludes that his RFC finding that Plaintiff was *not* limited to unskilled work was a typographical error. Any such scrivener's error is harmless. *See Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)); *see also Poppa v. Astrue*, 569 F.3d

F.3d at 1333 ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so." (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ is entitled to resolve any conflicts in the record))); *see also Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir. 1992) (a finding of "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence").

Plaintiff asserts that the ALJ lacked the expertise to make an RFC finding, and that his finding was a "speculative inference from the medical report" (Pl. Br. at 17). But Plaintiff ignores that the ALJ—not a doctor—is responsible for assessing the RFC. 20 C.F.R. § 404.1546(c) (an ALJ is responsible for assessing RFC); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). Rather, "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities. . . . The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished). Here, the ALJ reasonably assessed the RFC, and explained the substantial evidence that supported that decision. *See Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir. 2009) (the court's determination of whether the ALJ's ruling is supported by substantial evidence must be based on the record as a whole).

---

1167, 1172 n.5 (10th Cir. 2009) (finding "a mere scrivener's error" harmless where an ALJ mistakenly wrote that surgeries took place in 2004 instead of 2005).

Plaintiff further contends that the ALJ "understated the record" because Dr. McGoldrick diagnosed him with moderate to severe depression and appears to contend that the RFC for "low stress and low social work" does not account for this diagnosis (Pl. Br. at 15-16). Dr. McGoldrick, however, diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Moderate to Severe (Tr. 608) and the ALJ specifically acknowledged this diagnosis (Tr. 44 ("Dr. McGoldrick diagnosed him with major depressive disorder")). Yet, diagnosis of a condition alone does not establish disability. *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir. 1988). Further, Dr. McGoldrick's diagnosis did not provide any functional limitations that the ALJ could have included in the RFC. *See Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (unpublished) (rejecting the argument that the ALJ erred in evaluating medical source opinions: "neither doctor gave an opinion about the functional limitations, if any, that these conditions imposed"); *see also Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (unpublished) (because the doctor's findings did not have any bearing on the claimant's functional limitations, the ALJ did not need to specifically discuss those findings in setting her RFC). An RFC assessment must set forth measurable and concrete limitations and an ALJ will not make assumptions about what functional effects result from a condition. *See, e.g.*, Social Security Ruling (SSR) 02-1p, 2002 WL 628049, at *6 (an ALJ may "not make assumptions about the severity of functional effects of obesity combined with other impairments," but must "evaluate each case based on the information in the case record"). Instead, the ALJ looks to the entirety of the record evidence for indicia of the claimant's actual functioning. *See* 20 C.F.R. §§ 404.1520(e)(4), 404.1529(c), 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *2. As explained in detail above, the ALJ properly considered the longitudinal record and reasonably found that Plaintiff did not have disabling limitations.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED.  Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 25th day of September 2020.

_____
DUSTIN B. PEAD
United States Magistrate Judge